STOKES *v.* THE LORAIN JOURNAL CO. ET AL.

(No. 881399—Decided March 2, 1970.)

Common Pleas Court for Cuyahoga County.

*Messrs. Gottfried, Ginsberg, Guren & Merritt, Mr. Richard S. Rivitz, Mr. Kenneth G. Weinberg, Mr. Carol Daken* and *Mr. Jerry Kugelman,* for plaintiff.

*Messrs. Baker, Hostetler & Patterson, Mr. James P. Garner* and *Mr. Gary L. Bryenton,* for witnesses.

*Messrs. Baker, Hostetler & Patterson, Messrs Wickens & Wickens, Mr. Richard F. Stevens, Mr. Parker M. Orr, Mr. William G. Wickens* and *Mr. William E. Wickens,* for defendants.

McMONAGLE, J. The within action for libel was filed on March 2, 1970. The Ohio Rules of Civil Procedure became effective July 1, 1970. Rule 86 provides as follows:

### RULE 86
### EFFECTIVE DATE

"These rules shall take effect on the first day of July, 1970. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies."

The court finds that the application of the Ohio Rules of Civil Procedure to the within matter are feasible and would not work an injustice.

These rules carry into effect the liberal discovery philosophy that has become the standard for civil litigation in the federal courts and a substantial number of the state courts. Such a standard for construction and application of the rules is written into the Ohio Rules of Civil Procedure.

### RULE 1

"(B) Construction

"These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice."

There was submitted for decision by the court, a paper that was captioned "Request by a Notary for Instructions." This has been treated by the court as a motion by the plaintiff to compel an answer to a deposition in accordance with the provisions of Rule 37(A)(2).

FACTS:

The plaintiff in this case is the Mayor of the city of Cleveland. He filed an action against the defendants, Lorain Journal Company, Doris O'Donnell and Howard Beaufait, asking judgment in the amount of $2,000,000.00 claiming that he was libeled by said defendants.

Oral depositions for the purpose of discovery were instituted by the plaintiff and the following persons were summoned to appear as witnesses, namely Thomas Vail, Editor and Publisher of the Cleveland Plain Dealer; William Ware, Executive Editor, and Ted Princiotto, Night Managing Editor. The Cleveland Plain Dealer, which is operated by the Forest City Publishing Company, is not a party to this lawsuit, nor are any of the last named persons. At the time of the depositions, the following transpired.

"Thomas Vail:

(1) "Q. Do you know whether or not in the last few years, say the last five years, the Plain Dealer considered doing a story on the Grand Bahama Island?

"Mr. Stevens: Object.

"A. I think that is privileged information of the newspaper, and on that basis I will not respond.

"Q. Well, it is not privileged at all. I am not asking you for the sources of any such story. In fact, no such story was printed by the Plain Dealer, was it?

(2) "Q. Did you send a reporter to the Grand Bahama Island?

"A. I feel that is privileged information of the newspaper, also.

"Mr. Weinberg: Well, will you instruct the witness to answer that question.

"The Notary: You are so instructed to answer the question.

"Q. Do you have a reporter named Robert McGruder?

"A. Yes.

(3) "Q. Did he visit the Grand Bahama Island to investigate a story about the island?

"Mr. Weinberg: Would you direct the witness to answer that question.

"The Notary: You are so instructed to answer.

"Mr. Weinberg: Will you certify that question to Common Pleas Court.

"William Ware:

"Q. Do you know if the Plain Dealer since you have been executive editor has run a story dealing with Mayor Stokes and the Grand Bahama Island?

"A. It has not.

(4) "Q. Was any such story assigned by the Plain Dealer?

"Mr. Stevens: Object. Object on the basis of the Ohio statute to which we have previously made reference, the First Amendment of the Federal Constitution, and the section of Article 1 of the Ohio Constitution as expressed in length during Mr. Vail's deposition.

"The Witness: In response to your question, I would have to, of course, stake out my own position there explicitly. That as I understand the statute, this is a matter of confidential information, and the revelation of confidences, in my understanding, is that a newsman is not required to answer that question.

"Q. Did you send a reporter to the Grand Bahama Island to investigate such a story?

"Mr. Stevens: Objection. Same grounds.

"The Witness: I have the same. I take the same position.

"Mr. Weinberg: Will you direct the witness to answer that question.

"Ted Princiotto:

"Q. As far as you recall, was there ever a reference in the Plain Dealer to the Mayor's involvement in the Grand Bahama Island?

"A. I don't think we ever run any such story.

"Q. Well, did any such alleged involvement come to your attention?

"Q. This is the point at which I ask the reporter to direct you to answer, and if you don't want to answer, you don't answer.

"Q. Meaning alleged involvement of the Mayor with the Grand Bahama Island.

(5) "Q. Do you know whether the Plain Dealer has sent Robert McGruder to the Grand Bahama Island to investigate a story?

"Mr. Stevens: Objection. Objection on the grounds of the state statute, the federal and state Constitution which has been previously asserted.

(6) "Q. Did Robert McGruder submit to you a memorandum concerning his investigation of the Grand Bahama Island?

"Mr. Stevens: Object. First of all, it assumes there was such an investigation, which has not been proven. Second, on the statutory and dual constitutional ground we previously asserted."

The record discloses that the witnesses were directed by the notary to answer quoted questions as indicated and upon being so directed to answer, each refused.

It is the contention of the defendants and also of the witnesses, that they should not be required to answer these questions because they are newspaper men they are not required to disclose any information gleaned by them in their newsgathering work; it being their claims that:

(a) R. C. 2739.12 relieves them of any obligation to disclose any such information; and

(b) By the provisions of Article I, Section 11 of the Ohio Constitution, and the First Amendment of the United States Constitution, any information that they may have pertinent to the issues in this lawsuit is of such a nature so that they are constitutionally protected from being required to disclose it.

R. C. 2739.12:

"Newspaper reporters not required to reveal source of information.

"No person engaged in the work of, or connected with or employed by any newspaper or any press association for the purpose of gathering, procuring, compiling, editing, disseminating, or publishing news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding, trial, or investigation before any court, grand jury, petit jury, or any officer thereof, before the

presiding officer of any tribunal, or his agent, or before any commission, department, division, or bureau of this state, or before any county or municipal body, officer or committee thereof.''

Article I, Section 11 of the Ohio Constitution provides:

''Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.''

The First Amendment of the Constitution of the United States is as follows:

''Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.''

Objection by the witnesses to their being required to answer the questions was made, not only by counsel for the defendants in this case, but he was joined in such objection by counsel who represented the witnesses individually and also the Forest City Publishing Company which publishes the Plain Dealer. The procedure, in effect prior to July 1, 1970, did not provide for the participation of counsel for a witness in a deposition hearing.

However, under the provisions of Civil Rule 26(B) (1) as read in conjunction with Rule 30(D), a witness is specifically granted standing, in limited respects, to object to deposition proceedings or questions. *In re Martin*, 141 Ohio St. 87, and *Ex parte Oliver*, 173 Ohio St. 125, only in such respects, is modified. These cases had held that ''A witness who is not a party has no legal right upon * * * deposition, to refuse to answer any question * * * because the attorney believes that the testimony sought is irrelevant, inadmissible or immaterial.'' Rule 30(D) modifies these decisions so as to allow a deponent witness who is not a party to object if an examination is being conducted in bad faith or in such a manner as to antagonize, embarrass or oppress the deponent or witness. This includes, of course, the right of a witness or his counsel to

interpose an objection raised on a claim of constitutional infringement. The steps taken in this respect by counsel for the witnesses were not improper.

The depositions referred to were initiated by counsel for the plaintiff for the purposes of discovery. While this had historically been accepted as a proper purpose of a deposition, it is now specifically so provided by the Ohio Rules of Civil Procedure.

### RULE 26

"*Parties may obtain discovery* by one or more of the following methods: *deposition* upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes: physical and mental examination; and requests for admission. Unless the court orders otherwise, the frequency of use of these methods is not limited.

"(B) Scope of Discovery. Unless the court orders otherwise, in accordance with these rules, the scope of discovery is as follows:

"(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things *and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*"

### RULE 30

"After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination for the *purpose of obtaining information that may lead to properly admissible evidence in Court.*"

Plaintiff's counsel have represented to the court, both

in their briefs and orally, at the hearing hereof, that they had reason to believe and in good faith did believe that these witnesses possessed information which, if disclosed, was reasonably calculated to lead to the discovery of admissible evidence; this information being to the effect that either one or all three of the said defendants in the within lawsuit definitely knew prior to publication that matters contained in the publication, which are alleged to be libelous, were untrue and that nevertheless they proceeded to publish such untruthful matters.

The specific questions are obviously of a preliminary nature, but the ruling of the court is not founded on such a basis but is based upon the propositions that were briefed and argued by all parties. Simply stated, they are:

(1) Are the matters being inquired into totally irrelevant to the purposes of discovery as claimed by the plaintiffs?

(2) Are the witnesses by virtue of their occupation statutorily or constitutionally protected from disclosing the desired information?

The Supreme Court of the United States has by various pronouncements of the law of libel, as applicable to public officers, enlarged or expanded the hazards of holding public office. Solely by reason of his occupation, a public officer is not afforded the same right of redress for libel as are all other workers so that, "* * * a public official may not constitutionally recover damages for a false and defamatory statement about his public conduct unless he shows that the statement was motivated by actual malice." *New York Times Co.* v. *Sullivan*, 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686.

"Actual malice" was defined as requiring that the alleged defamatory statement was made, (a) with knowledge that it was false; or

(b) with reckless disregard whether it was false or not.

In the case of *Garrison* v. *Louisiana*, 379 U. S. 64, at page 74, 85 S. Ct. 209, at page 216, 13 L. Ed. 2d 125, it was stated, "* * * only those false statements made with the

high degree of their awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions.''

In the case of *St. Amant* v. *Thompson*, 390 U. S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262, the Supreme Court essentially reiterated its pronouncements in *Times* and in *Garrison*.

It will be the obligation of the plaintiff at the trial of the within case to establish

(1) The defendants had actual knowledge, prior to the publication, that the offensive matter was untrue, or,

(2) The publication of such matter was made with utter disregard as to the truth or falsity of the statements made.

Evidence that one or all three of the defendants knew prior to publication of the falsity of the matters that were published would obviously be relevant to issues in this case.

Under the Ohio Rules of Civil Procedure when relevancy is claimed as being the reason for refusal to answer the matter objected to must be ''totally irrelevant.'' (See 4 Moore's Federal Practice, par. 2616, p. 1177.) Likewise, objection that questions are a ''fishing expedition'' is no longer valid. (See Moore's Federal Practice 2d Ed. 26.55.)

It is possible that the defendants and the witnesses on one side, and the plaintiff on the other side, feel that the steps taken by the opposite party are for purposes other than in the furtherance of the search for the truth because of

(1) Political overtones or undertones that obviously attach to the personalities involved; and

(2) The fact that the plaintiff is suing one newspaper and its employees for libel and the witnesses, through whom discovery is being sought, are employees of another newspaper.

The court, however, accepts the representation of good faith of the plaintiff, although it would appear that the plaintiff would not need to depose all three witnesses, or even one of them, to attempt to procure the desired information.

Attention of counsel is called to Rule 30, Subsection (B) (5), which states:

"A party may in his notice name as the deponent a public or private corporation or a partnership or association and designate with reasonable particularity the matters on which examination is requested. The organization so named shall choose one or more of its proper employees, officers, agents, or other persons duly authorized to testify in its behalf. The persons so designated shall testify as to matters known or available to the organization. This subdivision (B95), does not preclude taking a deposition by any other procedure authorized in these rules."

The court likewise considers that the reluctance of the witnesses to disclose the requested information results from a concern that any rights of a newspaperman to withhold disclosure be not whittled away by judicial decisions.

The Civil Rules which are to a large extent patterned after the Federal Rules of Discovery, were adopted by the Supreme Court of Ohio in order to facilitate discovery of the true facts in any action and to do this in an expeditious manner. A major philosophy of the Civil Rules is that the parties to a lawsuit shall be afforded liberal rights to discovery so that the true facts may become known to all the parties to the litigation prior to the time that the action comes on for final trial.

It is obvious that if the within action was one involving a negligence claim or was asking recovery based upon the commission of a criminal act, information in the possession of the editors of a newspaper would not be immune from discovery merely because of the fact that they are in the newspaper business.

For example, assume that John Smith filed a lawsuit asking recovery from William Brown on a claim that Mr. Brown was negligent in his operation of a motor vehicle; that it came to the attention of Mr. Smith's lawyer that a newspaper reporter had been at the scene at the time of the occurrence and he was the only disinterested eye-witness to the occurrence, but that the name of the re-

porter-witness was unknown to counsel; assume further that the reporter had been dispatched to the scene by the editor of the newspaper.

It would obviously be important for the plaintiff's attorney to learn the name of such reporter-witness, and he therefore proceeds by deposition, to attempt to ascertain from the editor of the newspaper the following:

(1) Had a reporter for that newspaper been dispatched to the scene of the collision; and

(2) The name of the reporter if one had been so dispatched.

The newspaper itself carried no news of the incident, but whatever information its editor or employees had about the matter came to their attention by virtue of their news-gathering operations. Certainly the specific provisions of Rule 26 and Rule 30 would require that the requested disclosures be made.

It was certainly never contemplated by the Supreme Court of Ohio in its adoption of the Civil Rules that R. C. 2739.12, or Article I, Section 11 of the Ohio Constitution, or the First Amendment of the Constitution of the United States would inhibit or prohibit the elliciting of information needed by the plaintiff's attorney in the preparation of a tort action, or that libel actions were exempted from the provisions of the discovery rules.

The facts in connection with the instant case are analogous to those of the hypothetical case. It has been represented in court by plaintiff's counsel that he is in good faith attempting, by means of discovery procedure provided for by the Ohio Rules, to discover relevant facts bearing upon issues in his lawsuit which he understands, in good faith, can be procured from the witnesses. Whether such information is actually within the knowledge of the witnesses is not an issue at this time. Whether such information if procured, would be admissible in court is likewise not in issue. The court is called upon merely to decide whether an attorney for a plaintiff in a tort action has the right to procure information which he believes will lead to admissible evidence upon the trial of his case. Certainly

if the plaintiff's counsel can learn through these witnesses the name of a person who had personally witnessed or participated in an incident in which one or more of the defendants was involved, and that such defendant therein became possessed of knowledge prior to the publication that the matter published was untrue, plaintiff's counsel should be able to discover such information. Should it be now ruled that these witnesses are immune from responding in the respects indicated in this action, it could then be held that any person who is in the process of gathering news as a newspaper reporter and observes the commission of a crime or the occurrence of an act that gives rise to an action in negligence, could not be required to disclose what he saw or heard.

The court therefore finds that the contentions made in behalf of the defendants and the witnesses are not well taken and the witnesses should therefore have answered the quoted questions.

### RULE 37(A)

"(4) Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent who opposed the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."

The court finds that, since these proceedings have occurred during what might be termed the transitionary period between code practice and rule practice, and the opposition to answering was substantially justified, that an award of expenses would be unjust.